Hear ye, hear ye. The United States Court of Appeals is now open according to law. God save the United States in this honorable court. Good morning. The first case on our docket is 20-40359 Villarreal v. City of Laredo. Mr. Morris. Good morning. May it please the court. My name is J.T. Morris. I represent plaintiff appellant Villarreal. This case is about holding government officials accountable after they tried to turn routine news gathering and reporting into a felony. No person could have found that Ms. Villarreal committed a crime simply for asking a police officer to verify facts in the course of Ms. Villarreal's routine reporting of the local news. In fact, every reasonable official would have understood that Ms. Villarreal was doing no more than exercising a core tenet of freedom of speech and of the press. And that's the right to ask government sources for information and accurately report what those sources disclose. Defendants violated the Constitution when they arrested Ms. Villarreal for doing no more than exercising those core First Amendment rights. I think we focus on the retaliation aspect, Your Honor, because there's an arrest present. We certainly do in our pleadings. But if you arrest somebody for engaging in First Amendment activity, that's just a First Amendment violation. It's not a First Amendment retaliation case. It is, Your Honor. I would agree with that. And we complain that it's a direct and retaliatory claim. The reason we brief it as retaliation is because that's what the district court treated it as. So we're addressing the district court's error in focusing on probable cause instead of focusing on the First Amendment violation that was at hand here. It seems to me that you have an easier claim. You can avoid all the retaliation doctrine issues by just focusing on what you... I think you preserved the backup claim, but I'm surprised that you treat it as a backup claim rather than as your primary claim. I think, Your Honor, that's correct. It is an easier claim. But again, because the district court focused on probable cause, we addressed the district court's error. That was the holding in the core of the district court's qualified immunity finding. And that's one of the issues I plan to address this morning, Your Honor, is why the district court erred finding that defendants had qualified immunity over the First and Fourth Amendment claims. But I agree, Your Honor, that's a violation claim. And we do brief it very briefly in our brief when we talk about directly interfering with our First Amendment rights. And the second issue I do intend to address this morning is why the district court erred in dismissing Ms. Villarreal's claim that defendants selectively enforced effective Penal Code 3906C. I want to first address the issue of qualified immunity. And I want to set the table for this morning's discussion by focusing exactly on what defendants arrested Ms. Villarreal for in the arrest warrant affidavits they constructed. They predicated it on just four things, that Ms. Villarreal asked Laredo Police Officer Goodman for facts about a public suicide and a fatal car crash, that she received those facts from Officer Goodman, that at the time Villarreal asked for that information, according to defendants, those facts had not been made public, and finally, that by releasing the information before other news outlets, Ms. Villarreal would gain popularity on Facebook, which is where she reported the local news. In sum, those arrest warrant affidavits show what every reasonable official, and frankly, every ordinary citizen would understand as core journalism, asking government sources for information, for facts to inform the public, while hoping you scoop your competitors. That's not a and especially here, when defendants had no indication or no suggestion that Ms. Villarreal had threatened Officer Goodman, bribed her, or intended to use that information for anything other than to report the news. Is there any dispute that this is a totally voluntary conversation on both sides? In terms of between Ms. Villarreal and the police officer? Yes, sorry to be imprecise, there's any indication that this was anything other than a totally consensual conversation between the officer and your client? No, Your Honor, I don't believe there's a dispute about that. So, moving on, this freedom to ask and report facts from government sources is one of the very reasons the First Amendment exists. I mean, clearly established law confirms that. This clearly established law shows not only that defendants violated the First Amendment, but any reasonable official would have understood he could not arrest Ms. Villarreal for engaging in routine reporting. This leads us to what I think is one of the District Court's most conspicuous errors, and that's not finding a clearly established First Amendment right. And underpinning that error is the District Court glossed over the Supreme Court's decision in Smith v. Daily Mail. There, the Supreme Court held that the state could not criminally punish a newspaper for doing basically the same thing that Ms. Villarreal did. The newspaper sent its journalist to the scene of a crime where those reporters asked witnesses, police officers, and an assistant district attorney for information about the crime. Those sources revealed the name of the juvenile murder suspect, which the newspaper then published. And the court held that because those reporters lawfully obtained the information, that the state could not punish the newspaper. And what's important about the court said that whether or not the government officially released the information was not controlling because the journalists there use routine reporting techniques, i.e. asking a government official for facts, and that was a way to lawfully obtain information. So Daily Mail tells us and would have told a reasonable officer here that he could not punish Ms. Villarreal for asking an officer for information in the course of accurately reporting the news. That alone shows why defendants have no qualified immunity here. And this is a First Amendment case. Often the qualified immunity context, we struggle to find cases with analogous facts. We have one here with Daily Mail. So I would urge the court to find that Daily Mail alone establishes why defendants have no qualified immunity. But even then, if you move on to other cases like the Forrestar case, again, there the Supreme Court held that the government cannot punish a recipient, someone who receives information in the course of reporting the news, when the government itself is the source of disseminating that information. So that would have informed a reasonable officer that he could not punish Ms. Villarreal for receiving information in the course of reporting the news that Officer Goodman voluntarily disclosed. The District Court erred in not finding those cases established a clear First Amendment right for Ms. Villarreal to gather and report news from a government source. Once you accept that, and we urge the district that this court too, everything else falls into place. Because no reasonable officer could have found he could have made a crime out of what Ms. Villarreal did. When this brings back to your original, I think what I was talking about earlier with the Nieves probable cause rule, and this court's probable cause rule in Keenan v. Tejada, the District Court focused on that as its first step in the qualified immunity analysis, that was error. Anytime there is protected speech at play, whether or not it's sole basis for probable cause finding, or part of the basis for probable cause finding, a court should assess whether or not that speech is protected and how it impacts the probable cause analysis. Instead, the District Court here simply jumped into an element-based assessment of Texas Penal Code 3906C. Had the District Court first assessed protected speech, it would have been clear, and it is clear, that no reasonable officer could have applied 3906C under the circumstances. And to that end, no reasonable officer could have found probable cause because he would have understood all that Ms. Villarreal did was exercise a clearly established First Amendment right. Your Honors, I want to focus a little bit on the issue of defendants' argument in the District Courts finding that defendants could reasonably rely on Texas Penal Code 3906C and have qualified immunity because of that officers generally are presumed to enforce the laws on the books, but that's not a blanket rule. Supreme Court made that clear as early as Michigan v. DeFilippio, and we cite several cases finding that where protected speech or another right was the sole basis for an arrest, and a reasonable officer would understand that, that it's unreasonable to enforce a statute, even if it's on the books, to criminalize the exercise of that right. And that's exactly what happened here. No reasonable officer could have found that 3906C, a statute that criminalizes news gathering on its face, and that no local official had enforced in the statute's 23-year history, could be reasonably applied to Ms. Villarreal's conduct. I would urge the Court to look at the Robinson and the Sandel v. Larrion cases from the Sixth Circuit. Those cases, I think, provide great guidance on why qualified immunity is not available to defendants here. So, Mr. Morris, to be clear, there is no evidence that that statute was ever enforced, that anyone else was ever arrested under that statute? As far as we're aware, Your Honor, no. It's been enforced under jurisdictions, but not locally, and not 3906C. The only case we're aware of where 3906C wasn't enforced, and actually a reported case, was the State v. Ford case, where the San Antonio Court of Appeals here in Texas held that grand jury secret testimony did not apply under that statute and show it could not be enforced. The only other two cases are those that defendant cited, the Reyna case and the Tidwell case, but both of those cases involved subsection A and B of the statute. Those subsections embody the purpose of the statute, which is to prevent officials from using public information or information in the government's possession for corrupt and illicit purposes. In Tidwell, you had a county prosecutor who used information the government's possession to go after two whistleblowers, and in Reyna, you had a government official use information to essentially engage in bid rigging. Those are the purposes of 3906, and so a reasonable officer, even knowing those cases, would understand, and that would enforce in his mind, that 3906C could not be used against everyday routine journalism. So in sum, we urge this court to find that the district court erred, holding that the defendants had qualified immunity over Ms. Villarreal's First and Fourth Amendment claims. I want to move on, Your Honors, to the district court's dismissal of Ms. Villarreal's selective enforcement claim, and this turns on two key allegations. One, as you just mentioned, Judge Graves, the fact that no local official had enforced this statute against the media or anybody else in his 23-year history, and second, that they enforced this statute against Ms. Villarreal simply because they did not like her candid style of journalism that tended to place these officials in a bad light. That is textbook selective enforcement. The district court erred dismissing this claim on two grounds. First, it found that probable cause impacted the selective enforcement analysis. It doesn't. The Supreme Court made clear in the Wren v. United States case that even though probable cause is a determinant for a Fourth Amendment claim, it does not prevent a selective enforcement equal protection claim from going forward. The second is that the district court erred in construing the similarly situated class too narrowly. District courts seem to focus on finding the similarly situated class to be only those who asked or offered information from police officer Goodman or the Laredo police spokesman Jose Baeza. That was unreasonable, especially at the pleading stage on a factually intensive claim like selective enforcement. Ms. Villarreal pled that she was similarly situated to other local media who routinely asked for and received information from local law enforcement. That's enough to establish the similarly situated class. The single difference being that she engaged in a style of journalism those others didn't. That's why they singled her out. We would urge the court to reverse the district court's dismissal of Ms. Villarreal's selective enforcement claim. I would urge the court also to look at the Lacey v. Maricopa County case. It's out of the Ninth Circuit, but it shows very similar facts to those we have here, especially in the selective enforcement context. A deliberate, planned-out investigation and arrest of a reporter that local officials didn't like. This brings me to my final point, Your Honor. This was not a warrantless arrest. This was not an on-the-spot, use-of-force decision. As Ms. Villarreal has alleged, this was a deliberate, orchestrated investigation to target her simply for news gathering and reporting that other journalists do every day. When a constitutional violation results from a deliberate act and deliberate conduct, it's... Mr. Morris, on the selected enforcement claim, she has to, Ms. Villarreal, has to plead that she was intentionally treated differently from others who are similarly situated. And others similarly situated would be journalists who had collected information from a government official and then published that information. And I guess it would have to be from someone who wasn't authorized to disclose that information. Is that part of what they contend happened? And that's the reason for her arrest? As Ms. Villarreal pleads, and I would point the court to Record 174 and then Record 187, the local media and these officials knew that local media regularly asked Laredo local law enforcement for facts and received facts from those local law enforcement. I will concede, Your Honor, that Ms. Villarreal did not specifically plead that those other media received it from unauthorized sources. But that's a very reasonable inference. That's what journalists do. I would ask the court to look at Justice Gorsuch's opinion in Nieves. And again, Nieves sort of carves out that selective enforcement-like exception where he tells courts to apply this selective enforcement-type analysis commonsensically. And I think it's very common sense that journalists everywhere simply ask government officials, whether or not they are the official spokesman for a department or agency, for information in the course of reporting the news. And so I hope that answers your question, Judge Graves. I think it does. And I mean, and I think along those same lines, it would be for her to be able to allege that other journalists were reporting information that they had gotten from an unauthorized source would be a journalist revealing a source. And that's not typically required that the other journalists would reveal the source of that information. They just publish it. And that's correct, Your Honor. And that gets, I think, at another aspect here of why I don't want to use the word obvious violation, but it's as close as it gets. Again, this is routine journalism, asking government sources for facts, reporting accurately what they reveal. And just going back to my earlier point, this is a deliberate act. There's no qualified immunity for deliberate violations of the Constitution. And at the very least, there should be no deference like there is in warrantless arrests, on-the-spot use-of-force context. That deliberation here underscores why defendants were objectively unreasonable, both in violating Misdreavous First and Fourth Amendment rights and selectively enforcing a statute that no local official had enforced in 23 years. Thank you, Your Honor. I see my time is up. Thank you. Mr. McCamey? Good morning, Your Honor. May it please the Court? I'm Mick McCamey. I represent the City of Laredo, Laredo Police Chief, and the officers who are alleged to have committed violation of Ms. Villarreal's rights. Let me first say that the appellant has mischaracterized the conduct at issue. There were no actions taken by any member of the Laredo Police Department against Ms. Villarreal for publication or speech. The conduct that was penalized, not by the officers, they didn't make the crime, is described in the provision of the Texas Penal Code that we've been discussing, which penalizes the solicitation or receipt of private information. In fact, that statute even references the Public Information Act, which can serve as the basis of determination of... Do citizens have a right under the Constitution to ask public officials questions? They have a right under the Constitution and under Texas law, and that's done, as I mentioned, under the Texas Public Information Act. And the reason that's important, Your Honor, is because that act not only defines the scope of publication of city records or public records, but also those that must be held confidential and not disclosed, specifically in the area of private information. Just to be clear then, you agree that citizens have a right to solicit from a public servant information? Typically, yes. In some circumstances... So the statute, then, it would seem to me, is on its face unconstitutional. The statute has never been held unconstitutional on its face, and that's not solved in this case. On its face, it appears to be unconstitutional. I basically just read to you the text of the statute, and I think you're agreeing. Tell me, I don't mean to put words in your mouth, but I think you're agreeing. You have a First Amendment right, as a citizen, to solicit information from a public official. To solicit the information, except in the case where you know or understand that that solicitation is for private information that should be held private, and it invades privacy rights. So there is some obligation on the requester, as well, Your Honor. Not just an overbought... I may have put words in your mouth then. You're saying that there is no right of a citizen to ask a public official of information. I'm not saying whether the government official has to respond. I'm just saying, can a citizen ask a public official a question? Well, they most certainly can. However, the right to receive that information, which is prescribed by that state statute, is not unlimited. And that's because, obviously, privacy rights are involved. Governmental entities hold documents and records. Okay, but that's on the public official, right? If a public official violates some confidentiality rule, that's a problem for the public official. I'm talking about for the non-official, for the citizen who's asking the question. The citizen can ask any question, but receipt of that information, solicitation and receipt of that information for a personal benefit, understanding that that request could result in divulging private information that violates individual rights, not held by the government, that aren't owned by the government, is a problem. So, yes, of course, broadly, anyone can ask anyone a question. And there is some issue in this case about improper release of the information by someone not authorized to do so. That's because the governmental entity holds much information that is, if disclosed, that would, if disclosed, violate privacy rights. So, you're saying the citizen has the right to ask? Certainly. But only so long as that information is already public? You know, if the information could be lawfully disclosed. And in this case, under that statute... Well, that's circular. I mean, obviously, the legislature could pass a statute doing any number of things. A legislature could theoretically pass a statute saying there shall be no questions by any citizen of any public official on any topic at any time. My question to you is, is that statute obviously unconstitutional in the most brazen possible way you can imagine? No, it is not. And that's because... That, what you just mentioned, certainly would. Okay. But, and certainly there's no... Well, the difference is that if you solicit and receive information that yields a personal benefit, as the statute describes, and that term is used in the Texas Penal Code, it could, in an unlawful disclosure of private information, that would violate the statute. And remember, this statute has not been held unconstitutional, except by that one example of Judge Knotson in the 111th District Court, whose order was never... But you're saying it hasn't been held unconstitutional. Is there any evidence that anybody tried to enforce it in this jurisdiction before Ms. Villarreal's arrest? There is not. We have no record, based on our search, of anyone trying to use, for personal benefit, private information that was disclosed lawfully or unlawfully. Well, let's talk about personal benefit. What do you contend is the personal benefit in this case? Well, as pled by Ms. Villarreal in her pleadings, she obtained sponsorships, she obtained some equipment, scholarships for equipment for her work, and so forth. So, we... And so, you're saying the officers were aware of that, because what we're talking about here is, they needed to have probable cause for this arrest. Correct. Based on this statute. And so, they didn't learn of her getting some kind of sponsorship or something after the arrest. You're saying they investigated... Because she says that in her complaint. But you're saying, we go behind the complaint, and you're saying the officers knew that, and that was part of the basis for the probable cause that they had when they sought the arrest warrant. Is that what you're saying? We're saying that all of the elements of that offense were investigated and known by the officers prior to the arrest. Yes, Your Honor. And the pleadings do not say that they weren't. So, her benefit, again, is she got sponsorships from her Facebook, for her Facebook page. Is that right? There were benefits that she pled in her pleading, to that effect. Yes, Your Honor. No, no, no, no, no. I'm talking to you now about what you told me the officers knew at the time they got the arrest warrant. What did they know about her benefits? Well, I don't have all the information on their investigation, but they did know that some benefit had been received by her, and it's a personal benefit. They don't know... Did they know what it was? They did know all the elements, Your Honor. I do not know each officer, what each officer knew. No. Again, the pleadings... Does this essentially criminalize journalism? No, Your Honor. Because let's just stipulate that journalists earn a salary. Well, no, it does not, because remember, what's punished here is not the publication, it's the receipt and solicitation. Right, journalists ask questions of public officials all the time. Certainly, they do. So is that... And they receive compensation for doing so? Yes, they do. Okay. Yes. It sounds to me that that's not criminal in Texas. No, that's not criminal. What's criminal is receipt of the information that is not lawfully distributed and that the governmental entity has a duty to maintain privacy. Journalists ask public officials to leak all the time. Okay. Not just a public press conference that's displayed on the broadcast news. There are off-the-record conversations every single second of every day across this country. Is that now subject to criminal liability? That alone is not, Your Honor. Again... What is the statute doing that is different from what we're discussing? Because it seems to me that's exactly what the statute is being used for. I think it's important to distinguish the type of information being sought. This was private information that the government held, but it's not related to operation of the police department. It's not related to an investigation of how the city functions or anything that would be of public interest. It was private information, such as the name of a suicide victim, which are statutorily confidential. Isn't that Florida Star? The receipt of the private information is one of the distinguishing factors in the statute, for sure. Just asking information to obtain private information and obtaining that private information for personal benefit is what the statute made prohibited. And again, this case does not seek to hold that statute unconstitutional, and it has not been held unconstitutional except for one ruling from the bench. Was the officer who shared that information with her, was that officer prosecuted? Prosecuted? Yes. I am not aware of a prosecution on that officer. I do believe there has been... Was he disciplined? Was the officer disciplined for sharing that information? There was an internal affairs investigation, and I do not have the result of that. So... Your time has expired. Okay, thank you, Your Honor. Mr. McGee. Thank you. May it please the court. My name is Eric McGee, and I represent the Honorable Isidro Alaniz, who is the Webb County District Attorney, as well as Maricela Jackaman, who is the Chief Assistant District Attorney in Webb County. Mr. Alaniz and Ms. Jackaman respectfully ask this court to affirm the district court's decision granting their motion to dismiss, as Ms. Villarreal has failed to state a claim that could overcome their entitlement to qualified immunity. And I think I want to be... There's some aspects that I certainly agree with Mr. McKamey on here, that this case certainly does not revolve around the publication of information, and specifically the facts that have been pled so far in the case. This was a 12B6 motion to dismiss, filed by the District Attorney and the Chief District Attorney, based not only on their absolute immunity, but then, as the court ruled, their entitlement to qualified immunity. When you look at the very facts that have been pled, and do the fact-intensive analysis, and as the court did, I mean, it's a 59-page order in this case, where the district court reviewed all the facts that have been pled, and before the court, and determined that they were entitled to qualified immunity. The facts are very conclusory and general, concerning Mr. Alaniz and Ms. Jackaman. There's not much there as to what their involvement was, other than potentially reviewing a search warrant affidavit that some officers brought to them for review for the statutory compliance, and the elements necessary for that. Again, as Mr. McKamey said, 39.06 is a statute, a state statute in the Penal Code, that deals with the misuse of official information. I believe Mr. Morris mentioned Part A and Part B, which are the criminal aspect that falls on public servants for the misuse of official information, but Part C, the statute that was reviewed by the DA and the Assistant District Attorney, deals with that person soliciting and receiving the public information, and I agree, Judge Ho, when you were asking some specific questions about the use of the statute, I think you have to look at every element of the statute, because it requires multiple things. The first thing it requires is that a person, it's not a public servant, any person commits this offense if they solicit or receive from a public servant certain information, and it's with that intent to either defraud another person, to harm another person, or for them themselves to receive some sort of benefit. Where is the fraud element in the text? It's under C, it says a person commits an offense if with intent to obtain a benefit or with intent to harm or defraud another. Is that what's at issue in this case?  but it's the to obtain a benefit. And then you go to the parts that Mr. McKamey specifically spoke about, is that the public servant had access by means of his office to cert, or her office to certain information, and that information had not been made public. And then the statute went further, goes further on in subsection D to actually define the type of... But help me out here. I mean, to me, it honestly looks like the statute focusing on the intent to obtain a benefit part, since that's what's at issue in this case. It seems to me this statute effectively criminalizes journalism. Tell me why that's wrong. Don't tell me why, if I'm mistaken about that. It's the intent behind it and the purpose for what was done. And I think you mentioned, and Mr. Morris mentioned... The intent is to obtain information so that they can broadcast it to the public and to thereby earn compensation for being an aggressive journalist. Is that something that the state can criminalize? No, you're limiting the scope there, I believe. And I would disagree that that's not what's at case here, and that's not even what's been pled by Ms. Villareal, is that she is a journalist who receives a salary from a newspaper organization or a television station, or even independently receives a salary. The benefit here that she receives is that she, in her own pleading, pleads that she receives free meals. I understand that the source of compensation is different. Is that the sole basis for your distinction? Or are there other reasons why this is a different fact pattern? Well, what's been pled so far, just in this case, because that's what's before... That was what was before the district court as a 12B6. I mean, the actual search... I'm trying to ask a simple question. I apologize if I'm not clear. I'm sorry. I get that this is not a traditional reporter who is on payroll of a newspaper outlet. I get that. Is this case different in any other way, or is that the only way it's different? It's different in several other ways, and I'll give you those examples too. And that's where I think you have to go back to the specific language of 39.06 and the facts of this case that have been pled so far. It also has the element that requires information that has not been made public, and it specifically defines that as information to which the public does not generally have access to, that is prohibited from disclosure under Chapter 552 of the government code, which is the Texas Public Information Act. And here, the court did an analysis of the city of Laredo, because that's who held the information, not my clients, Mr. Alaniz or Ms. Jackaman. They weren't ever afforded the opportunity to either go through their public- But if the line of distinction that you're drawing is it's information that is not public, that doesn't distinguish ordinary journalistic practice. Journalists ask for non-public information all the time. Journalists don't just dutifully report press releases from politicians. Correct. They dig behind that and try to get other information that's not in a press release. They go do research, they go obtain- and that's what the other cases, the case laws actually show, is that they went down and obtained information like off of a search warrant or off of an indictment or off of other sources- Or talking to a public official for off-the-record non-public information. Correct. And then you have to understand that this is not for her collecting a salary. That's not the argument that the benefit collects a salary. So your main argument- I think your only argument of distinct- how this is different from a journalism case is this person is not paid the way we normally expect a journalist to be paid. That's, I think, your main argument, if not your only argument. Well, and I think that she pled herself in her complaint. It's the record on Appeal 171 where she alleges that the only thing that was in the search warrant affidavit- and again, this is not my client, Mr. Alaniz or Ms. Jackaman- was- and this is the defendant Ruiz- was that he put in there the release of the information before other sources gained her popularity on her Facebook page. So, I mean, that's the only benefit he's alleging so far. And that's the only benefit that was before the court. And that's where I think you have to go through what she actually alleged against my clients. Would you agree that if you're allowed to publish the Pentagon Papers and, of course, the Supreme Court has told us that that was a First Amendment right in the New York Times, if you have a constitutional right to publish the Pentagon Papers, you also have a constitutional right to ask Secretary McNamara to voluntarily hand the papers over? Yes, but that's a question of then- That's certainly non-public information. But then there's a process that that goes through and what the intent- that's a different situation. We're not looking at the same statutory provision here, but if the same statutory provision- I'm just asking, Ivo. You can- The New York Times can publish the Pentagon Papers. Can the New York Times then, before doing that, simply call up Secretary McNamara and says- and ask, could you please hand over the Pentagon Papers? And if there's a statute in place, the answer to that is yes, that someone can call someone up and ask that. But the specific statute in place here, if a same or similar statute was in place here, it's not the publication of the documents that are even in question. It's the intent- Well, that's why I'm asking- To obtain that information. Just to be clear, the reason I'm asking my hypo is you're saying this is publication versus asking a question. That's the purpose of my hypo. I think that's my question. Right. And I think Mr. McKamey pretty much addressed that, which leaves me in somewhat of- I only have 45 seconds left. And I really meant to point out all the different distinctions as it is. Just the court does a very good job in its 59-page order, pointing out the only time Mr. Alanis and Ms. Jackaman are even mentioned and their involvement in this case. It's very, very general, conclusory, vague allegations. There are no specifics against them other than the little retaliatory thing that the court specifically addresses in that. And that's to address the First Amendment. The rest is just this broad sweeping defendants did this, defendants did that, without any explanation or factual allegations about either one of my clients. I know my time is up. I'll just say for those reasons and the reasons based not only in our brief and in the district court's order, Mr. Alanis and Ms. Jackman respectfully request this court affirm the district court's dismissal. Thank you, counsel. Mr. Morris. Thank you, Your Honor. Just three quick points on rebuttal. The first is in terms of the allegations against defendants Alanis and Jackman, the district court denied their defense of absolute immunity, implicitly acknowledging that they did enough here to be implicated in the 1983 claims. And we have defendant Alanis, an allegation where he took Ms. Villarreal into his office behind closed doors and rebuked her criticizing his office. There's also allegations in there about defendants Alanis and Jackman still being at the head of selecting the sterilex statute to enforce against Ms. Villarreal. Ms. Jackman signed off on the arrest warrant affidavits. Those allegations are enough. Moving on to the intent to benefit prom. If the defendant had known that Ms. Villarreal received little advertising fees and free meals for journalistic efforts, one would assume they would have put it in the arrest warrant. They didn't. The only thing they put in the arrest warrant was that she released this information to scoop other journalists. That's not a crime. Supreme Court has made that clear. Even if she did receive benefits, even if they were known about that, penalizing receiving some financial gain for publishing the news would open every single journalist up to criminal prosecution across the country. Finally, your honors, the fact that the information was in the government's possession, it might have been considered private, does not impact the criminalization of journalism here. This statute criminalizes journalism. The core function of the press is to go out and find non-public information to bring it to light and inform the public. If the government could force the press and any other person looking for information to guess whether or not the information was private or public, it would eviscerate freedom of the press and it would undermine the very purpose of the First Amendment. Thank you, your honors. Ms. Villareal thanks the court for his time. Thank you. This case will be under submission. Thank you. Thank you.